STATE TAX COMMISSION *vs.* DAVID W. GRAY.

Suffolk. February 15, 1960. — March 10, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Taxation,* Income tax. *Statute,* Construction. *Words,* "Retirement allowances."

Old age benefits received by an insured individual under the Federal Social Security Act, 42 U. S. C. (1952) §§ 401–403, are not "retirement allowances" within, nor taxable under, G. L. c. 62, § 5 (b). [540]

On the issue whether certain benefits first provided by Federal law many years after the enactment of the Massachusetts income tax statute were taxable under that statute, the fact that the Massachusetts taxing authorities from the beginning of such benefits treated them as taxable and the fact that bills to exempt the benefits from taxation were introduced but failed of passage in the Legislature in several years were immaterial. [541-542]

APPEAL from a decision by the Appellate Tax Board.

The case was submitted on briefs.

*Edward J. McCormack, Jr.,* Attorney General, & *Roy Teixeira,* Assistant Attorney General, for the State Tax Commission.

*Richard C. Sheppard* & *Louis Hammer,* for the taxpayer.

CUTTER, J. This is an appeal by the State tax commission (the commission) from the Appellate Tax Board's decision that the appellant there (the taxpayer), an inhabitant of Massachusetts, was not taxable under G. L. c. 62, §§ 5 (b) and 6,[1] as amended, upon Federal old age benefits received by him in 1953. Those of the commission's requests for rulings refused by the board present the question of the taxability of these benefits.

The board found the following facts. The taxpayer in his return for 1953 reported taxable income from salaries and wages and paid an income tax on such income. The commission later imposed an additional tax of $25.70 on $920 of old age social security benefits. From the denial of an application for abatement of this additional tax the taxpayer seasonably appealed to the board. In his returns for years prior to 1954, the taxpayer reported income from his employment and deducted, pursuant to G. L. c. 62, § 6 (c),

---

[1] Section 5 (b) (as amended through St. 1939, c. 486, § 1) reads: "(b) The excess over two thousand dollars of the income . . . derived from professions, employments, trade or business shall be taxed at the rate of one and one half per cent per annum. . . . Retirement allowances, however described, from the commonwealth or any county, city, town or district thereof, or from any person, if not exempt by law, . . . shall be taxed under this subsection." Section 6 reads: "Income taxable under subsection (b) of section five shall be the gross income from the profession, employment, trade or business, in the year for which the income is computed . . . less the following deductions: . . . (c) All taxes paid within the year to the United States . . . in respect of the profession, employment, trade or business . . . ." See for later amendments of the sections, St. 1954, c. 611, § 1; c. 679, § 4; St. 1955, c. 780, § 2; St. 1956, c. 443, § 1; c. 517, § 1; St. 1957, c. 448, § 1; c. 677, §§ 1, 5.

the social security taxes withheld from his wages and paid to the United States by his employer.

"Since the inception of the Social Security Act and the advent of the receipt of . . . Federal old age benefits . . . it has been the practice" of the commissioner of corporations and taxation "to treat the . . . payments as taxable under" c. 62, § 5 (b). In 1954, 1955, 1956, and 1958, the Legislature had before it bills which would have expressly exempted from income taxation "benefits received under the Social Security Act." The commission in its annual report to the Legislature for 1955 (1956 House Doc. Nos. 95, 105) recommended such legislation and stated in effect that the then existing income tax did tax such benefits at the rate applicable to business income.

The old age benefits here taxed were obviously benefits to an insured individual paid under 42 U. S. C. (1952) §§ 401–403. Several different types of payments are provided by these sections, e. g. § 402 (a), old age insurance benefits to an insured individual; § 402 (b), benefits to the wife of such an individual; § 402 (d), benefits to such an individual's children; § 402 (e), widow's benefits; § 402 (g), mother's benefits; § 402 (i), lump sum death benefits. These benefits can be reduced under circumstances more fully stated in § 403, among other things, by reason of the insured individual's other earnings, if the individual has not attained a stated age, in 1953, age seventy-five; now seventy-two. See 42 U. S. C. (1958) § 403 (b) (1). See also Schottland and Bartlett, Federal Social Security (Am. Law Inst. and Am. Bar Assn. 1959) pp. 33–100.

The Social Security Act was first adopted in 1935 (49 Stat. 620, 622), and its provisions were a then novel method of dealing on a national scale with the problem of financing "an adequate program of security for the aged." See *Helvering* v. *Davis*, 301 U. S. 619, 635–638, 640–645; *Social Security Bd.* v. *Nierotko*, 327 U. S. 358, 364; Douglas, Social Security in the United States (2d ed.) 26–125, 157–172. See also *Steward Mach. Co.* v. *Davis*, 301 U. S. 548, with reference to a related tax. The old age benefits are paid from

the fund created under § 401 to which are appropriated the proceeds of the taxes imposed in 1953 by 26 U. S. C. (1952) §§ 480–482, 1400 et seq., 1426 et seq. (see now 26 U. S. C. [1958] §§ 1401–1403, 3101 et seq.).

The payments have some aspects of a pension; in other respects they resemble insurance or annuity payments. See *Hurd* v. *Illinois Bell Tel. Co.* 136 F. Supp. 125, 136–139 (N. D. Ill.); affd. sub nom. *Seybold* v. *Western Elec. Co.* 234 F. 2d 942, 946–947 (7th Cir.), cert. den. 352 U. S. 918, 977, a case dealing not with taxation of old age benefits, but with their effect upon a corporation's pension contracts; *Hooker* v. *Hoey*, 27 F. Supp. 489, 490 (S. D. N. Y.). Old age benefits, however, are neither wholly in the nature of pension nor wholly insurance payments. They are a unique and novel solution by the Congress to the problem of "providing partial protection to the covered worker and his family against loss of earnings resulting from the worker's retirement or disability or death. . . . Benefits are paid without regard to need or financial condition to persons meeting objective statutory requirements." See Schottland and Bartlett, Federal Social Security, p. 1. Old age benefits are exempt from taxation under the Internal Revenue Code of 1954. See I. T. 3447, 1941–1 C. B. 191; 1954 Code Reg. § 1.61–11 (b).

The pertinent provisions already quoted (see footnote 1, *supra*) of the Massachusetts income tax law were in effect without substantial change from the 1921 codification of the General Laws through the taxable year 1953. The provision with respect to retirement allowances was first included by St. 1920, c. 102. These sections of the statute have been construed in three cases.

In *Lyon* v. *Commissioner of Corps. & Taxn.* 258 Mass. 450, 452, it was held that a Carnegie Foundation retirement allowance given to a professor, as a gift and based upon no "antecedent relations" between the Foundation and the professor, was not taxable under § 5 (b) despite the fact that there was "no statutory exemption covering in terms the allowance." It was there said, "The words [of § 5 (b)]

import some further payment in the nature of compensation for services already rendered. They have reference to a preëxisting relation founded on obligation to pay to the recipient something in the nature of income from 'professions, employments, trade or business.' The payments received . . . from the Foundation had no such basis. . . . The money payments made by the Foundation to the complainant do not arise out of any [preëxisting obligation or] relation similar to that of employer and employee . . . . . [The payments] are not based on any moral obligation . . . [of] the Foundation. There is no . . . semblance to a consideration. They are entirely gratuitous as distinguished from being grounded upon sentimental considerations arising from present or past services rendered, or from some kind of equivalent."

In *Commissioner of Corps. & Taxn.* v. *Hale,* 315 Mass. 556, 558, and in *Everett* v. *Commissioner of Corps. & Taxn.* 317 Mass. 612, 613, 616, this court considered whether certain allowances paid to retired employees were taxable under § 5 (b) as business income or under § 5 (a) as annuity income. In the *Hale* case, an annuity contract given by the employer in exchange for the employee's release of the employer's obligation under the employment contract was held to be taxable under § 5 (a). In the *Everett* case, where the "retirement benefits . . . were administered and underwritten by an insurance company to which the . . . [employer] 'intends to make annual payments' for the purchase of annuities for those . . . eligible to . . . retirement," it was held that the "insurance company was the . . . instrumentality . . . of the employer" and that the payments were taxable under § 5 (b) rather than § 5 (a). These two cases are here significant only because, like the *Lyon* case, they place emphasis upon the existence of a preëxisting obligation of the employer to his employee as a prerequisite of taxability under § 5 (b). It was said in the *Everett* case (at p. 615), "If the payments have their source in the employer and employee relationship and are in the nature of further compensation for services rendered and are made either di-

rectly or indirectly by the employer, then they are retirement allowances." The commission does not now argue that old age benefits are taxable under § 5 (a).

Doubtless the Massachusetts income tax is intended to tax the income reasonably comprised within the several classes of income which the statute in fact by apt language purports to tax, so far as within the Commonwealth's taxing jurisdiction (see *Commissioner of Corps. & Taxn.* v. *Dalton*, 304 Mass. 147, 148–149). Tax laws, however, like other statutes, are not to be extended beyond the scope contemplated when they were "originally framed and their words chosen." See *Commonwealth* v. *Welosky*, 276 Mass. 398, 401–402. The right to tax must be found within the letter of the law and is not to be extended by implication. See *Gordon* v. *State Tax Commn.* 335 Mass. 431, 435; *Curtis* v. *Commissioner of Corps. & Taxn.*, *ante*, 169, 173.

Old age benefits do not readily fit within the general concept of business income in the nature of wages. They certainly are not in terms within the most nearly applicable provision of § 5 (b), relating to "[r]etirement allowances . . . from the commonwealth or any county, city, town or district thereof, or from any person." Such benefits, financed by a nationally administered tax program, were unknown in 1920 when this provision was first enacted. They are received from the Federal government, not from a former employer. They rest not upon any contract of employment but upon statutory provisions. Although in a very general sense they have their "source" in the fact that the recipient has in the past been an employee under an "employer and employee relationship," or several such relationships, they cannot be said to be wholly "in the nature of further compensation for services rendered." They certainly are not "made either directly or indirectly by the employer." We think that they do not come within the term "retirement allowances" as defined for purposes of § 5 (b) in the *Everett* case (317 Mass. 612, 615).

There are several types of old age and survivors benefits, some of which have been mentioned above. Of these, only

those payable to an insured individual have any resemblance to a retirement allowance taxable under § 5 (b). The circumstance that these other benefits are not taxable under § 5 (b) would make us reluctant to treat old age benefits alone as thus taxable in the absence of clear legislative language imposing a tax.

We attach no significance to the fact that social security taxes are deductible under § 6 (c) during years when an employee is in taxable employment. Such taxes (see 26 U. S. C. [1952] §§ 480–482, 1400, 1426, and later amendatory acts) imposed upon income from self employment or wages are within the deduction provided by § 6 (c). There is no comparable language placing old age benefits within § 5 (b).

It also is not significant that, by c. 62, § 8 (h), inserted by St. 1945, c. 625, § 4, certain unemployment benefits (see G. L. c. 151A; see also Internal Revenue Code of 1954, c. 23, and predecessor statutes) are made exempt from taxes imposed by c. 62. These benefits arise from legislation substantially contemporaneous with the Federal statute providing old age benefits, but unemployment payments are in various respects different from the old age benefits. The Legislature might reasonably have felt that, without a specific exemption, § 5 (b) might tax the unemployment benefits while imposing no tax upon the old age benefits, if it gave thought in 1945 to old age benefits at all.[2]

Section 5 (b) is sufficiently definite to make inappropriate (see *Allen* v. *Commissioner of Corps. & Taxn.* 272 Mass. 502, 508–509) resort to subsequent legislative history and administrative practice to explain its meaning. Cf. *Lynch* v. *Commissioner of Educ.* 317 Mass. 73, 80–82. The introduction of bills in all but one of the years 1954 to 1960, inclusive, to exempt such payments and the failure of the Legislature to pass such proposed legislation are not legislation imposing a tax and afford no basis for the tax here assessed. It should

[2] The 1945 act in this respect was based in part upon a bill (1945 House Doc. No. 586) filed by the State advisory council of the division of employment security, which would have had slight occasion to bring any matter relating to old age benefits to the attention of the Legislature. See also 1945 House Bill No. 1881.

be pointed out also that the taxing authorities' practice of taxing old age benefits was not contemporaneous with the 1920 amendment of what is now § 5 (b). Such benefits did not commence until many years later. See *Burrage* v. *County of Bristol,* 210 Mass. 299, 301.

Abatement is to be granted in the amount of $25.70, with costs.

*So ordered.*